**REVERSE, REMAND, and AFFIRM; and Opinion Filed June 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-11-01370-CV

---

### BRENDAN VAN VORIS AND JOSEPHINE DURKIN, Appellants

### V.

### TEAM CHOP SHOP, LLC D/B/A CHOP SHOP MMA AND JERRY HOWELL, Appellees

---

**On Appeal from the 196th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 75840**

---

## OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

Brendan Van Voris and his wife, Josephine Durkin, appeal the trial court's summary judgment dismissing their negligence and gross negligence claims against Team Chop Shop, LLC d/b/a Chop Shop MMA and Jerry Howell based on a pre-injury release signed by Van Voris. We affirm the trial court's judgment on the negligence claims but reverse and remand the case for further proceedings regarding gross negligence.

## BACKGROUND

Van Voris was participating in an aikido course at Chop Shop's facility when he was injured during demonstration of a jiu-jitsu technique. He and his wife sued Chop Shop and

Howell for negligence and gross negligence and asserted claims for loss of services and loss of consortium. Durkin's claims are derivative of Van Voris's and reference to Van Voris includes his wife unless context requires otherwise. Similarly, reference to Chop Shop includes Howell unless context requires specificity.

Chop Shop answered Van Voris's suit with a denial and "affirmative defenses" of assumption of the risk, contributory negligence, and pre-injury release. It moved for summary judgment on Van Voris's negligence and gross negligence claims based on its defense of pre-injury release and attached to the motion a one-page "Release and Waiver of Liability and Indemnity Agreement." Chop Shop also relied on the affidavit of Jason Ott, who testified Van Voris signed the release and Ott executed the document to acknowledge receipt. Chop Shop argued the release was sufficient to release Van Voris's negligence claims and, based on *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713 (Tex. App.—San Antonio 1994, writ denied), the gross negligence claims failed because they were inseparable from the negligence cause of action.

Van Voris responded to the motion, attaching his own affidavit. He testified he did not have time to read or review the "few" documents Ott gave him to sign and no one from Chop Shop ever explained to him or informed him the documents contained any release or indemnity language. He argued the release did not meet fair notice requirements, including satisfaction of both the express negligence doctrine and the conspicuousness requirement. He also argued the release did not reference gross negligence and that a release of gross negligence is against public policy and unenforceable as a matter of law.

Van Voris contends in three issues on appeal that summary judgment was improper because the release is ineffective under Texas law. Specifically, he argues Texas public policy

prohibits pre-injury releases of gross negligence and the release fails to conform to Texas law regarding express negligence and conspicuousness. We begin by addressing whether the release meets the fair notice requirements of Texas law.

## DISCUSSION

Chop Shop, as the party moving for summary judgment on its affirmative defense of release, had the burden of establishing each essential element of that defense. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam); *see also* TEX. R. CIV. P. 166a(c). The release signed by Van Voris was a prospective release of future claims, including claims based on Chop Shop's own negligence. Chop Shop's summary judgment burden therefore included a showing that the release language meets the fair notice requirements of conspicuousness and the express negligence doctrine. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993).

### Fair Notice

The Texas Supreme Court has adopted the fair notice requirement to apply to two kinds of provisions—releases and indemnity agreements—both of which have the effect of relieving a party in advance of responsibility for its own negligence. *Id*. at 507–09. Releases and indemnity agreements are distinct provisions. A release operates to extinguish a claim or cause of action and is an absolute bar to the released matter; it is an affirmative defense. *Id*. at 508. In contrast, an indemnity agreement creates a potential cause of action; it is a promise to safeguard a party against an existing or anticipated loss. *Id*. Regardless of the label, both releases and indemnity agreements are risk-shifting provisions that, in the context of relieving a party of responsibility for its own negligence, are considered "extraordinary." *Id*.

"Fair notice," as developed by the supreme court, has two necessary elements—the questioned provision must satisfy the conspicuousness requirement and the express negligence doctrine. *Id.* Conspicuousness means "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Id.* (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972) (bracket in original)). In *Dresser*, the supreme court adopted the standard for conspicuousness expressed in the Uniform Commercial Code section 1.201(10). *Id.* at 510. That section provides:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (West 2009).

The express negligence doctrine was first adopted to apply to indemnity clauses and requires that a party seeking indemnity for the consequences of its own negligence must express such intent in specific terms within the four corners of the document. *See Dresser*, 853 S.W.2d at 508; *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987). The purpose of the doctrine is "to require scriveners to make it clear when the intent of the parties is to exculpate" a party for that party's own negligence. *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 726 (Tex. 1989). The doctrine is not an affirmative defense but a rule of

contract interpretation.  *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994).

Van Voris argues the release he signed fails both components of fair notice.  Regarding conspicuousness, he asserts the body of the release consists of black type printed in "nearly illegible seven point font."  The record cite to this statement is the attachment to his summary judgment affidavit.  He also states that "[a]ll characters, with the exception of the initial heading, are printed in the same exceedingly small print" and "the capital letters [are] printed in the same sized font as the remainder of the text."

Although Van Voris contends the type is "nearly illegible seven point font," the record does not identify the font size of the release.  The copy appended to Van Voris's affidavit appears to be a facsimile copy of the one-page document that Chop Shop attached as part of its evidence.  The font therefore appears smaller in the facsimile copy.  Van Voris does not suggest the document attached to Chop Shop's summary judgment evidence is not the accurate size, nor does he state he cannot read the document—rather, he asserts he did not read the document before he signed it.

The release is a one-page document containing the following heading (actual typeface and size replicated):

## Release and Waiver of Liability and Indemnity Agreement
(Read Carefully Before Signing)

The document contains seven numbered paragraphs.  Among the provisions, paragraph "2" of the document contains the following acknowledgements regarding the risks involved in participation in the martial arts program:

I/We fully understand and acknowledge that:
   a.  There are risks and dangers associated with participation in martial arts events and activities which could result in bodily injury partial and/or total disability, paralysis and death.

b. The social and economic losses and/or damages, which could result from these risks and dangers described above, could be severe.
c. These risks and dangers may be caused by the action, inaction or negligence of the participant or the action, inaction or negligence of others, including, but not limited to, the Releasees named below.
d. There may be other risks not known to us or are not reasonably foreseeable at this time.

Paragraph "3" of the document states the participant's acceptance of the risks, as follows: "I/WE accept and assume such risks and responsibility for the losses and/or damages following such injury, disability, paralysis or death, however caused and whether caused in whole or in part by the negligence of the Releasees named below." Paragraph "4" contains express release language:

> I/We HEREBY RELEASE, WAIVE, DISCHARGE, AND COVENANT NOT TO SUE the martial arts facility used by the participant, including its owners, managers, promoters, lessees of premises used to conduct the martial arts event or program, premises and event inspectors, underwriters, consultants and others who give recommendations, directions or instructions to engage in risk evaluation or loss control activities regarding the martial arts facility or events held at such facility and each of them, their directors, officers, agents, employees, all for the purpose herein referred to as "Releasee" ... From all liability to the undersigned, my/our personal representatives, assigns, executors, heirs and next to [sic] kin For any and all claims, demands, losses or damages and any claims or demands therefore [sic] on account of any injury, including but not limited to the death of the participant or damage to property, arising out of or relating to the event(s) caused [sic] alleged to be caused in whole or in part by the negligence of the release or otherwise.

Paragraph "5" provides further:

> I/We HEREBY acknowledge that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of THE UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

Above the signature line on which Van Voris signed his name, the following appears:

I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE, OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

Martial Arts School:  TEAM CHOP SHOP, LLC (dba CHOP SHOP MMA)

Van Voris's signature appears on the next line marked with an "X" and the words "Student Signature."

These quoted paragraphs, and particularly paragraph two, contain multiple references to the "risks and dangers" of participation in martial arts events and activities.  Van Voris signed under the statement, in all capital letters, that he understood he was giving up substantial rights by signing the document.

Paragraph four, beginning in all capital letters, states that the student is releasing, waiving, discharging and covenanting not to sue "the martial arts facility" used by him, "including its owners, managers, . . . their directors, officers, agents, employees, all for the purpose herein referred to as 'Releasee'" from all liability to the student and his "next to kin" for all claims "arising out of or relating to the event(s)" "alleged to be caused in whole or in part by the negligence of the releasee or otherwise."  The one-page document is both titled and devoted to the student's—here Van Voris's—release of Chop Shop and related individuals from any claims related to Van Voris's participation in martial arts events and activities.  The title of the document is in larger print than the specific paragraphs and leaves no doubt of the intent.  Paragraph four, which is the paragraph stating the release includes allegations of injury "caused in whole or in part by the negligence of the releasee," also begins with all capital letters.  This document is sufficiently conspicuous to satisfy that prong of the fair notice requirement.  *See*

TEX. BUS. & COM. CODE ANN. § 1.201(b)(10); *see also Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 452 (Tex. App.—Dallas 2011, no pet.) (concluding two-page contract titled "Health Assessment Waiver and Goals Work Sheet" that included word "release" in larger and bold print near top of second page and initialed by party was "sufficiently conspicuous to provide fair notice").

We also conclude the language within the four corners of this one-page document is specific and expresses the intent of exculpating Chop Shop for its own negligence, thus meeting the express negligence requirement. *See Ethyl*, 725 S.W.2d at 707–08; *see also Atl. Richfield*, 768 S.W.2d at 726. Van Voris argues, relying on *Ethyl*, the release language is too broad because it fails to identify any specific released party. The problem with the language in *Ethyl*, however, was that it did not provide for the release of losses caused by the indemnitee's own negligence. *See Ethyl*, 725 S.W.2d at 707. Specifically, the language in that document provided: "Contractor shall indemnify and hold Owner harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor, Contractor's employees, Subcontractors, and agents or licensees." *Id.* This language covered the contractor's indemnification of the owner—the indemnitee—for the negligence of contractor; it did not provide indemnification of the owner, who was Ethyl, for Ethyl's own negligence. The court rejected Ethyl's argument that the words "any loss" were sufficiently broad to cover a loss caused by Ethyl's own negligence. *Id.* at 708. Conversely, the language in the release signed by Van Voris covers the negligence of the "releasees," which include "the martial arts facility used by" him.

We overrule Van Voris's issue regarding fair notice.

**Gross Negligence**

The trial court also granted summary judgment on Van Voris's gross negligence claims. Chop Shop's summary judgment motion regarding gross negligence was premised on its assertion Van Voris's negligence and gross negligence claims are legally inseparable; because Van Voris's pre-injury release of the negligence claims meets the fair notice requirements, his gross negligence claims do not survive. Van Voris responded that pre-injury releases of gross negligence claims are against public policy and, as a result, void. These issues have not been answered directly by the Texas Supreme Court, and courts of appeals have reached different conclusions. This Court has not addressed the issues.

Our analysis of the parties' positions requires examination of both the public policy concerns raised by Van Voris and the relationship between claims of negligence and gross negligence argued by Chop Shop. Based on this analysis, we conclude Chop Shop was not entitled to summary judgment on Van Voris's gross negligence claims. Our decision is based on a number of factors, including the strong public policy against pre-injury releases of liability for one's own negligence, the Texas Supreme Court's acknowledgement that proof of actual damages and entitlement to those damages may be distinct issues in some circumstances, the heightened requirements for proving gross negligence, and the application of these concepts in the context of the facts of this case. We begin our analysis with the public policy considerations.

*Public Policy Considerations*

Chop Shop's defenses to Van Voris's claims, as posited in its summary judgment motion, are based on the release—a contract. Whether a contract violates public policy is a question of law, which we review de novo. *Barber v. Colorado I.S.D.*, 901 S.W.2d 447, 450 (Tex. 1995). Contracts that are against public policy are void and of no legal effect. *See James v. Fulcrod*, 5 Tex. 512, 520 (1851).

The Texas Supreme Court in its 2008 *Fairfield* decision elaborated on the analysis courts must undertake before declaring an agreement void on public policy grounds. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653 (Tex. 2008). If the legislature has not prescribed the conditions of enforceability of a promise or agreement, we must weigh the interest in enforcing the agreement versus the public policy interest against the enforcement. *Id*. at 663 (citing RESTATEMENT (SECOND) OF CONTRACTS § 178(1)). The legislature has not directly addressed pre-injury releases of negligence or gross negligence claims. It has, however, spoken regarding gross negligence and its relationship to exemplary damages.

Gross negligence, as defined in Texas, involves components focused on heightened concerns for public welfare. Specifically, two distinct requirements must be met to show gross negligence—(1) an act or omission that "involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and (2) a mental state of "actual, subjective awareness of the risk," but the actor proceeds "with conscious indifference to the rights, safety or welfare of others." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West 2008); *see also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994). "[I]n essence," a person commits gross negligence when he "knows full well that his conduct poses an extreme risk of harm to others and yet does not care." *Fairfield*, 246 S.W.3d at 690 (Hecht, J., concurring).

Gross negligence is also one of three express means for a claimant to recover exemplary damages in Texas. Specifically, exemplary damages may be awarded if the claimant proves by clear and convincing evidence that its alleged harm resulted from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a). Exemplary damages are damages "awarded as a penalty or by way of punishment" and not for compensation. *Id*. § 41.001(5).

They "are levied for the public purpose of punishment and deterrence," which justification derives from the criminal law. *Moriel*, 879 S.W.2d at 16–17. Not only has the legislature provided for exemplary damages, but the Texas Constitution prescribes exemplary damages for a homicide committed "through wilful act, or omission, or gross neglect . . . without regard to any criminal proceeding that may or may not be had in relation to the homicide." *See* TEX. CONST. art. XVI, § 26.

These authorities demonstrate a basic precept embedded in Texas laws. Exemplary damages serve a fundamental public purpose and are available in cases of gross negligence. This Court previously recognized this "paramount purpose." *See Anderson v. Trent*, 685 S.W.2d 712, 714 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). In *Anderson*, this Court determined "the nature of gross negligence resulting in exemplary damages does not call for the imposition of the comparative negligence reduction in damages." We emphasized in reaching this conclusion that the award of exemplary damages should be viewed "from the eyes of public policy" and "the distilled essence of [the myriad of ways gross negligence has been defined in Texas] is that ordinary negligence is not of the same ilk as gross negligence." *Id*.

The Texas Supreme Court also has weighed in heavily on the issue of pre-injury releases of simple negligence claims. As described above, the court adopted the fair notice requirement to apply to two kinds of "extraordinary" risk-shifting provisions that have the effect of relieving a party in advance of responsibility for its own negligence. *See Dresser*, 853 S.W.2d at 508. Conspicuous terms must appear on the face of the document and the terms must show express intent to exculpate the releasee from its own negligence. *See id.* at 508; *Ethyl*, 725 S.W.2d at 707–08. The fair notice requirement is engrained in Texas law based on a long-standing public policy of not allowing a party to shift the risk of its own negligent conduct without fair notice.

While the Texas Supreme Court has not addressed directly whether a pre-injury release of liability for gross negligence is against public policy, and therefore invalid, the court previously noted that "[p]ublic policy concerns are presented by such an issue." *Atl. Richfield*, 768 S.W.2d at 726 n.2. The issue in *Atlantic Richfield* was whether an indemnity provision for the indemnitee's own negligence met the express negligence requirement. Determining reference to "any negligent act or omission of [indemnitee]" sufficiently defined the parties' intent, the court noted that it was not deciding whether "indemnity for one's own gross negligence or intentional injury may be contracted for or awarded by Texas courts" because the issue had not been argued or briefed by the parties. *Id*.

Almost two decades later, in 2008, the supreme court addressed whether Texas public policy prohibits a liability insurance provider from indemnifying an award for punitive damages against its insured based on gross negligence. *See Fairfield*, 246 S.W.3d at 653. Limiting its decision to the workers' compensation context, the court concluded Texas public policy does not prohibit insurance coverage of exemplary damages for gross negligence. *Id*. at 670. The court's analysis explored in detail Texas public policy considerations, freedom of contract, and the purpose of exemplary damages. *Id*. at 660–70. While the court limited its holding and did not reach the issue before this Court, Justice Hecht acknowledged in his concurring opinion that the supreme court previously, in a case "[o]utside the insurance context," "suggested that a person's pre-injury waiver of another's liability for gross negligence is against public policy." *Fairfield*, 246 S.W.3d at 687 (Hecht, J., concurring) (citing *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997) (per curiam)). Justice Hecht noted, however, that one court of appeals had held an agreement to indemnify a person for his own gross negligence was not against public policy, citing *Webb v. Lawson-Avila Constr., Inc.*, 911 S.W.2d 457, 461–62 (Tex.

- 12 -

App.—San Antonio 1995, writ dism'd w.o.j.), and it was "an issue on which [the supreme court] has expressed no opinion*."* *Fairfield*, 246 S.W.3d at 687–88 (citing *Atl. Richfield*, 768 S.W.2d at 726 n.2).

At least one Texas appellate court has interpreted the supreme court's language in *Keszler* as an express statement that pre-injury waivers of gross negligence are against public policy. *See Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A number of appellate courts also have held that pre-injury waivers of gross negligence violate public policy and are void. *See Tex. Moto-Plex, Inc. v. Phelps*, No. 11-03-00336-CV, 2006 WL 246520, at *2 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.); *Rosen v. Nat'l Hot Rod Assoc.*, No. 14-94-00775-CV, 1995 WL 755712, at *7 n.1. (Tex. App.—Houston [14th] Dec. 21, 1995, no writ) (not designated for publication); *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986, no writ); *cf. Akin v. Bally Total Fitness Corp.*, No. 10-05-00280-CV, 2007 WL 475406, at *3 n.1 (Tex. App.—Waco Feb. 14, 2007, pet. denied) (mem. op.) (stating most courts hold pre-injury waivers of gross negligence are void and listing cases; concluding pre-injury waiver of negligence did not preclude proof of gross negligence).

Against this backdrop, and based on Van Voris's specific issue that a pre-injury release of gross negligence is against public policy and void, this Court addresses the validity of pre-injury releases of gross negligence for the first time. We do so, however, solely in the context of Van Voris's pre-injury release of Chop Shop for its own "negligence" described above. That is, Van Voris correctly contends the release did not reference gross negligence. Nor does Chop Shop argue the release would meet the fair notice requirements as to gross negligence.

- 13 -

Because gross negligence involves conduct that poses an extreme risk of harm to others and an actor that proceeds with conscious indifference to the rights, safety, or welfare of others, it is difficult to imagine that Texas's strong public policy against pre-injury releases of negligence would not apply to gross negligence. Accordingly, we conclude the State's public policy against pre-injury releases of liability for one's own negligence applies, at a minimum, equally to gross negligence, and the release signed by Van Voris does not meet that standard. In this context, we address Chop Shop's argument that Van Voris's gross negligence claims are dependent on the viability of Van Voris's negligence action.

*Separability of Negligence and Gross Negligence*

Chop Shop relies primarily on the appellate courts' decisions in *Newman* and *Tesoro Petroleum v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) for extinguishment of Van Voris's gross negligence claims. The courts in both cases concluded that, in the context of a pre-injury release for acts of negligence, "negligence and gross negligence are not separable." *Tesoro*, 106 S.W.3d at 127; *Newman*, 891 S.W.2d at 722.

*Newman* involved a pre-injury release of negligence claims regarding participation in a scuba certification course. *Newman*, 891 S.W.2d at 718. *Tesoro* involved a drilling contract indemnification clause that included indemnity obligations for claims arising from the negligence of any party and echoed the reasoning in *Newman*. *Tesoro*, 106 S.W.3d at 125. Both courts relied on the unviability of a gross negligence claim in the absence of a valid negligence action and a claimant's inability to recover the requisite compensatory damages to support exemplary damages for gross negligence. *Id.* at 126–27; *Newman*, 891 S.W.2d at 721–22. Neither court addressed directly the public policy issues surrounding pre-injury releases of gross negligence. Similarly, the courts did not address the relationship between the public policy of

allowing gross negligence releases and the legal principles the courts pronounced regarding inseparability of gross negligence and ordinary negligence claims. The court in *Newman* emphasized it was not addressing or expressing an opinion on the public policy issues. *Newman*, 891 S.W.2d at 722.

In contrast, a Houston appellate court reached the conclusion in *Rosen* that negligence and gross negligence are two separate causes of action and a pre-injury release of negligence cannot absolve a party from liability for gross negligence. *Rosen*, 1995 WL 755712, at \*7 n.1. Accordingly, the release did not bar the gross negligence claims. Reaching the same result for a different reason, the Waco Court of Appeals in *Akin* concluded the issue was one of proof—an effective pre-injury release of negligence did not preclude proof of negligence and related damages. *Akin*, 2007 WL 475406, at \*3.

The release signed by Van Voris is much like the pre-injury releases described in the referenced cases. It effectively released pre-injury claims based on negligence but did not mention gross negligence. Nor did the language of Van Voris's release suggest Van Voris was releasing a right to prove the elements of a negligence claim or actual damages, which would be a prerequisite to recovery of exemplary damages.

We agree with the proposition that exemplary damages generally are recoverable only upon proof of actual damages. *See Nabours v. Longview Savings & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004 (requiring award of more than nominal damages to support exemplary damages). That requirement of proof, however, does not equate in all cases with entitlement to actual damages. Specifically, the Texas Supreme Court acknowledged in *Nabours* there may be instances in which actual damages are not recoverable; yet in those instances, the claimant still must secure a finding on the existence

and amount of actual damages to support the punitive damages award.  *Nabours*, 700 S.W.2d at 903.

*Nabours* involved a suit to enjoin a home foreclosure and included common law fraud, DTPA, and waiver claims.  *Id*. at 902.  A jury returned a verdict in favor of the plaintiffs, finding zero actual damages and a six-figure sum for punitive damages.  The jury's punitive damage award was reversed on appeal because there was no finding of actual damages.  *Id*. at 904. Affirming the appellate court reversal, the supreme court relied on and confirmed the general rule in Texas that punitive damages are not recoverable in "the absence of actual damages."  *Id*. at 903 (quoting *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex. 1984)). Importantly, the court noted that "[e]ven in cases where actual damages are *not recoverable*, it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damages sufficient to support an award of punitive damage."  *Id*. at 903 (citations omitted; emphasis in original); *cf. Wright v. Gifford-Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex. 1987) (concluding, before enactment of section 41.008 of the civil practice and remedies code, that jury findings on actual damages not prerequisite to exemplary damages in workers' compensation case; noting not in conflict with *Nabours*, which requires finding of actual damages, because workers' compensation cases distinct).  This distinction between recovery and proof is significant when considered in the context of negligence and gross negligence claims.

As described above in our analysis of the heightened public policy concerns involving gross negligence and exemplary damages, we noted this Court's emphasis that "ordinary negligence is not of the same ilk as gross negligence."  *Anderson*, 685 S.W.2d at 714.  The Texas Supreme Court in *Moriel* also examined the distinctions in detail.  In doing so, it described the "extreme degree of risk" element of gross negligence that is associated with a defendant's

conduct as having "a threshold significantly higher than the objective 'reasonable person' test for negligence." *Moriel*, 879 S.W.2d at 22 (quoting *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)). The court also emphasized the required mental state for gross negligence is discrete and should not be confused with the "objective 'reasonable person' standard for ordinary negligence." *Id*. Contrasting the blurred meanings of gross negligence in other jurisdictions, the court stressed that gross negligence is not "an aggravated form of negligence." *Id*.

Texas's strong public policy prohibiting extraordinary risk-shifting provisions absent fair notice and the legislature's mandates regarding proof of gross negligence and recovery of related exemplary damages, lead us to conclude the release Van Voris signed did not release his gross negligence claims. There certainly are circumstances when negligence and gross negligence claims cannot be separated legally. Those circumstances are not presented in the context of a pre-injury, general negligence release.[1] We conclude Van Voris did not relinquish his claims for gross negligence based on the pre-injury release he signed. We sustain Van Voris's issues to the extent he complains about the propriety of summary judgment on his gross negligence claims.

### CONCLUSION

The one-page release signed by Van Voris meets the fair notice requirements for purposes of releasing Chop Shop from liability for its own negligence. The release did not cover gross negligence claims and did not preclude proof of claims for negligence and actual damages. Based on Texas's strong public policy prohibiting pre-injury releases of negligence, heightened concerns (both statutory and common law) involving gross negligence and exemplary damages,

---

[1] Our decision in *Ware v. Cyberdyne Systems, Inc.*, No. 05-10-01080-CV, 2012 WL 376671, at *4 (Tex. App.—Dallas Feb. 7, 2012, no pet.) (mem. op.), referencing a relationship between the requisite liability for negligence and gross negligence does not affect our analysis. That case involved a lack of duty and is thus not applicable in this case.

distinct elements for proving negligence and gross negligence, and the supreme court's acknowledgment it is a finding of actual damages (as opposed to entitlement) that is a prerequisite to exemplary damages, we conclude Van Voris did not release his gross negligence claims. Our conclusion is limited to the context presented by this case. *See* TEX. R. APP. P. 47.1. We reverse the summary judgment against Van Voris regarding his gross negligence claims and remand the case for further proceedings. The summary judgment is affirmed as to Van Voris's negligence claims.

/Mary Murphy/
MARY MURPHY
JUSTICE

111370F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

BRENDAN VAN VORIS AND
JOSEPHINE DURKIN, Appellants

No. 05-11-01370-CV        V.

TEAM CHOP SHOP, LLC D/B/A CHOP
SHOP MMA AND JERRY HOWELL,
Appellees

On Appeal from the 196th Judicial District
Court, Hunt County, Texas
Trial Court Cause No. 75840.
Opinion delivered by Justice Murphy.
Justices Bridges and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED IN PART** and **REVERSED IN PART**.

We **REVERSE** the portion of the trial court's judgment against appellants BRENDAN VAN
VORIS and JOSEPHINE DURKIN regarding their gross negligence claims, and we **REMAND**
for further proceedings as to those claims. We **AFFIRM** the trial court's judgment as to
appellants' BRENDAN VAN VORIS and JOSEPHINE DURKIN's negligence claims.

It is **ORDERED** that each party bear its own costs on appeal.

Judgment entered this 7th day of June, 2013.


/Mary Murphy/
MARY MURPHY
JUSTICE