**Affirmed in Part and Reversed and Remanded in Part and an Opinion by Each Member of the Panel filed November 27, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-01055-CV

## FELICITA DEL CARMEN CANAS AS NEXT FRIEND OF YENIFER ESTEFANI CANAS ESCOBAR, JAVIER ENRIQUE CANAS ESCOBAR AND BEATRIZ ABIGAIL DEL CARMEN CANAS, MINORS, Appellant

### V.

## CENTERPOINT ENERGY RESOURCES CORP., Appellee

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2011-08170**

### O P I N I O N

I respectfully concur with portions of Chief Justice Frost's opinion and with Justice Jamison's opinion and dissent from other portions as follows:

- I agree with Chief Justice Frost's conclusion that the tariff limits CenterPoint's liability for negligence and strict liability, but do not agree with all of her analysis.

- I agree with Chief Justice Frost that CenterPoint's summary-judgment motion failed to address an intentional-misrepresentation issue and that this issue should be remanded, but I do not agree with all of her analysis. I believe that the summary-judgment motion covered the newly added negligent-misrepresentation claim and that this portion of the judgment should be affirmed; I therefore disagree with both Chief Justice Frost and Justice Jamison on this point.

- I disagree with Chief Justice Frost's disposition of the gross-negligence claim and would remand the entire gross-negligence issue to the trial court. I agree with Justice Jamison on this point.

- I agree that the Canas Parties' negligence per se claims do not survive the tariff's limitations, but I disagree with Chief Justice Frost's reasoning.

## A.   Negligence and Strict Liability

CenterPoint moved for summary judgment on both traditional and no-evidence grounds. In its motion, CenterPoint claimed that its tariff barred the plaintiffs' claims for strict liability and negligence because their claims did not fall within the exceptions of the tariff. I agree. The Texas Supreme Court concluded in *Southwestern Electric Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002) that a tariff can limit liability for personal injuries. CenterPoint's tariff does exactly that.

*Grant* also requires that the tariff be narrowly drawn and provide a remedy for gross negligence and willful misconduct. *Id*. at 220. I would enforce the tariff as to the negligence and strict liability claims because it is narrowly drawn. But as discussed more fully below, I would conclude that limiting liability for personal injuries caused by CenterPoint's gross negligence or willful misconduct is against public policy and that such a limitation is unenforceable. I disagree with Chief Justice Frost's analysis to the contrary.

## B.     Misrepresentation

After CenterPoint moved for summary judgment, the Canas Parties amended their petition to assert a claim for misrepresentation.  Although the Canas Parties' pleading does not use the word *intentional* in connection with the misrepresentation claim, Chief Justice Frost concludes that they asserted a claim for *intentional* misrepresentation.

To the extent that the Canas Parties alleged intentional misrepresentation, I agree with Chief Justice Frost and Justice Jamison that the claim should be remanded because the tariff cannot limit liability for willful misconduct, as discussed below.  For the sake of clarity, however, I would further hold that any negligent-misrepresentation claim encompassed by their pleading is barred by the tariff and summary judgment is appropriate on that claim even if not specifically mentioned in the original summary-judgment motion.  *See Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (reversal of a summary judgment on a claim not expressly addressed in the motion is not required if a ground asserted in the motion "conclusively negates a common element of the newly and previously asserted claims").

## C.     Gross Negligence

In its motion for summary judgment, CenterPoint asserted that a defendant that is not liable for ordinary negligence cannot be liable for gross negligence, and reasoned that because the tariff limits its liability in a way that prevents the Canas Parties from prevailing on their negligence cause of action under the facts alleged, their gross-negligence claim necessarily fails as well.  But CenterPoint did not prove that it was not negligent; it proved that its tariff relieves it of *liability* for any such negligence.  In this respect, I agree with Chief Justice Frost:  when liability for negligence is barred by a limitation of liability in a utility's tariff, that bar does not automatically defeat a claim for gross negligence.  *See Grant*, 73 S.W.3d at 215, 220–22.  *See also Van Voris v.*

*Team Chop Shop, LLC*, 402 S.W.3d 915, 924–26 (Tex. App.—Dallas 2013, no pet.) (holding that a gross-negligence claim did not fail, even though the negligence claim was barred by an enforceable pre-injury release). In my view, however, Chief Justice Frost has unnecessarily and confusingly parsed the Canas Parties' gross-negligence claims in a manner not briefed by the parties. I disagree with her analysis and with any partial affirmance of the Canas Parties' claims of gross negligence.

In its motion for summary judgment, CenterPoint raised the two following more specific grounds to support its contention that it was not negligent at all, and I would conclude that neither ground supports even partial affirmance of the judgment as it pertains to the Canas Parties' gross-negligence claims.

First, CenterPoint argued that by law it had no duty to consumers to inspect for leaks from pipes on the consumer's side of the meter, and that the accident was caused by a leak on that side. While this is true, no one contends that the leak was the *sole* cause of the decedent's injuries. The Canas Parties allege that another cause of the injury was the failure to adequately odorize the gas or to adequately warn of odorant fade, omissions that resulted in the decedent's failure to detect the presence of gas in time to escape. Neither of these claims is defeated by the fact that an additional cause of the accident or injury was a leak on the consumer side of the meter.

Second, CenterPoint argued that it was not negligent because it had no knowledge of a dangerous condition on the property. On this point, CenterPoint moved for a no-evidence summary judgment. But here, too, CenterPoint's failure to warn of a danger of which it was unaware—a leak in the consumer's housepiping—does not relieve it of responsibility to warn of another danger of which it was aware—odorant fade. On this point, the Canas Parties presented some evidence that CenterPoint was aware that the odorant that it used could fade, and that consumers therefore could not rely on the odorant to alert them to the presence of escaped gas creating a dangerous condition.

4

The Canas Parties also presented evidence that CenterPoint is aware that other companies warn of this condition.

Finally I disagree with footnote 7 of Chief Justice Frost's opinion, in which she states that the grounds for summary judgment raised in CenterPoint's motion do not include the argument that the tariff itself eliminates any gross-negligence claim. I think that issue was raised by CenterPoint and should be decided by this court.

The Texas Supreme Court first considered limitations of liability in a tariff in *Houston Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 672–75 (Tex. 1999). However in *Auchan*, the plaintiff abandoned its gross-negligence claim and the court expressed no opinion as to whether a tariff may limit liability for gross negligence or willful misconduct. *Id.* at 675. In *Grant*, the tariff at issue expressly excepted a cause of action for gross negligence from its limitation of liability, and the court found the tariff reasonable. *Grant*, 73 S.W.3d at 220. I think the language in *Grant* supports a categorical holding that a reasonable tariff cannot eliminate liability for personal injuries caused by the utility's gross negligence or willful misconduct. *See id.* ("[The utility's] tariff provision limiting its personal-injury liability is reasonable because the provision is narrowly drawn *and* provides a remedy for [the utility's] gross negligence or willful misconduct.") (emphasis added). By using the word *and* in that sentence, the court held that both a narrowly drawn provision and a preservation of a remedy for gross negligence and willful misconduct are necessary to a reasonable tariff.

Because this tariff acts as a pre-injury release, cases dealing with such releases also are instructive. Chief Justice Frost cites with approval a decision in which the Fifth Court of Appeals held that a pre-injury release of personal-injury claims based on gross negligence was void on public-policy grounds. *See Van Voris*, 402 S.W.3d at 924–26. In reaching that decision, the court followed the reasoning of the Ninth Court of Appeals in *Smith v Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App.—

Beaumont 1986, no writ). Significantly, this court has repeatedly reached the same result. *See Sydlik v. REEII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[W]hile pre-accident waivers of gross negligence are against public policy, post-accident releases are not." (citing *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997) (per curiam))); *see also Rosen v. Nat'l Hot Rod Ass'n*, No. 14-94-00775-CV, 1995 WL 755712, at *7 (Tex. App.—Houston [14th Dist.] Dec. 21, 1995, writ denied) (not designated for publication).[1] Indeed, both *Sydlik* and *Rosen* were cited in *Van Voris*. Moreover, this court's position is not unusual. *See, e.g.*, *Tex. Moto–Plex, Inc. v. Phelps*, No. 11-03-00336-CV, 2006 WL 246520, at *2 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.) (reaching the same result). *See generally* Ryan S. Holcomb, *The Validity and Effectiveness of Pre-Injury Releases of Gross Negligence in Texas*, 50 BAYLOR L. REV. 233 (1998). *See also Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) ("Gross negligence . . . will invalidate an exemption from liability . . . ."); RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."). And

---

[1] In reaching this result, we expressly rejected the contrary holding of *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied). In *Newman*, the court held that exemplary damages for gross negligence were unavailable where a pre-injury release barred recovery of actual damages for simple negligence. *But see Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987) (explaining in the context of the Workers' Compensation Act that a widow who obtained a finding of her late husband's employer's gross negligence and offered evidence of actual damages could recover exemplary damages, despite the fact that the Act barred recovery of actual damages and no finding of actual damages was requested); *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985) (explaining that even though the plaintiff recovered no actual damages, a *finding* of actual damages supported the award of exemplary damages, and stating that "[e]ven in cases where actual damages are not recoverable, it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damage."); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 459 (Tex. App.—El Paso 2006, no pet.) (holding that appellants were entitled to recover punitive damages based on a jury finding of actual damages, even though a settlement credit eliminated any recovery of actual damages). The First Court of Appeals, however, has followed *Newman*. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

although there is a split among the intermediate courts of appeals on this analogous issue, it nevertheless is a matter on which this court has spoken, and I believe that we should follow the same reasoning here.

I agree, however, that the tariff's failure to allow a private litigant to recover for gross negligence and willful misconduct does not invalidate the entire tariff. As courts have held in the analogous context of pre-injury releases, a release is still valid as to ordinary negligence even where the court refuses to apply it to claims of gross negligence. *See Van Voris*, 402 S.W.3d at 926; *Tex. Moto-Plex, Inc.*, No. 11-03-00336-CV, 2006 WL 246520, at *2; *Golden Triangle Raceway*, 708 S.W.2d at 576. I similarly would conclude that the tariff is not completely invalid because of its failure to provide a remedy for gross negligence or intentional misconduct, but would refuse to enforce a limitation of liability for such claims. I accordingly would reverse the summary judgment as to all such claims and remand them to the trial court.

## D.    Negligence Per Se

As it pertains to the Canas Parties' claim for negligence per se, CenterPoint's summary-judgment motion is based on its position that CenterPoint has no duty to inspect a consumer's housepiping before supplying gas to the consumer. While it is true that CenterPoint has no such duty, this argument does not address the Canas Parties' claims concerning the duty to odorize the gas or to warn of odorant fade. The Canas Parties pleaded that CenterPoint violated a number of federal and state regulations concerning the duty to odorize the gas, to test the strength of that odorant at the system's extremities, and to supply certain warnings to the consumer. In its summary-judgment motion, CenterPoint did not establish or even argue that it complied with all of these federal and state laws.

In summarily disposing of the Canas Parties' cause of action for negligence per se, Chief Justice Frost relies on two grounds. First, she summarily concludes—without

analysis—that the regulations cannot serve as the basis for a private cause of action for negligence per se.[2] I do not believe it is necessary to decide this question, because for the purpose of this appeal, we can assume, without deciding, that the statutes and regulations cited by the Canas Parties could provide the standard by which CenterPoint's duty is measured in a claim for negligence per se.

Second, she assumes that the tariff's limitation of liability is broad enough to cover CenterPoint's alleged failure to comply with these regulations. But this result cannot be assumed, because if the tariff's limitation of liability conflicts with federal or state statutes or regulations, it is the tariff that must yield. I accordingly believe that the question of whether the tariff's limitation of liability eliminates the cause of action for negligence per se is one that cannot be answered without first considering whether this

---

[2] There are tests that apply in making this determination. In considering whether violation of a state statute gives rise to a claim of negligence per se, Texas courts consider

(1)     whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty;

(2)     whether the statute puts the public on notice by clearly defining the required conduct;

(3)     whether the statute would impose liability without fault;

(4)     whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and

(5)     whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex. 1998). The analysis is essentially based on principles of tort law.

The determination of whether a duty imposed by federal law gives rise to a private cause of action is different. "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979) (stating that the "argument in favor of implication of a private right of action based on tort principles . . . is entirely misplaced"). A private right of action may be addressed by the legislature explicitly or it may be implied based upon "the language and focus of the statute, its legislative history, and its purpose." *Touche Ross*, 442 U.S. at 575–76. An implied right of action is generally found in the federal context only where "the statute in question at least prohibited certain conduct or created federal rights in favor of private parties." *Id.*, 442 U.S. at 569.

limitation conflicts with federal or state law.

The tariff may have the force and effect of state law, *see Grant*, 73 S.W.3d at 216–17, but federal regulations preempt contrary state law. *MCI Sales & Serv., Inc. v Hinton*, 329 S.W.3d 475, 482 (Tex. 2010) (citing *City of New York v. FCC*, 486 U.S. 57, 63–64, 108 S. Ct. 1637, 100 L. Ed. 2d 48 (1988)). *See also* TEX. UTIL. CODE ANN. § 101.008 (West 2007) (providing that the Texas Gas Utility Regulatory Act "shall be construed to apply so as not to conflict with any authority of the United States"). "A state law actually conflicts with a federal law when compliance with both is impossible or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hinton*, 329 S.W.3d at 482 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)).

Here, contrary state law also would trump contrary provisions in the tariff in much the same way that federal law preempts state law. This is so because CenterPoint's Texas Gas Rate Book provides that "[u]nless otherwise expressly stated, these rules apply to all Consumers . . . , except insofar as they are changed by or are in conflict with any statute of the State of Texas . . . [or] valid final order of any court, . . . in which case such statute, ordinance, [or] order . . . shall control . . . ." Thus, I would not conclude that the tariff's limitation-of-liability provision eliminates a claim for negligence per se without first determining whether doing so would conflict with a state or federal statute or regulation.

Although the Canas Parties cited a number of federal and state statutes and regulations in their summary-judgment response and on appeal, they have not identified any that actually conflict with the tariff's limitation of liability. *See, e.g.*, 49 C.F.R. §§192.16, 192.616, 192.625; *see also* TEX. UTIL. CODE ANN. § 104.251 (West 2007) ("A gas utility shall furnish service, instrumentalities, and facilities that are safe, adequate, efficient, and reasonable."); 16 TEX. ADMIN. CODE § 8.220(a) (2004) (R.R.

Comm'n of Tex., Master Metered Systems) ("Compliance with minimum safety standards required. Master meter operators shall comply with the minimum safety standards in 49 CFR Part 192."). To the extent that any of these provisions impose a duty on CenterPoint, CenterPoint is still required to comply with the regulations under its tariff.

The Railroad Commission has broad authority to ensure that utilities provide "safe, adequate, efficient, and reasonable" service. *See* TEX. UTIL. CODE ANN. § 104.001(a) (West 2007) ("The railroad commission is vested with all the authority and power of this state to ensure compliance with the obligations of gas utilities in this subtitle"). To that end, the Commission can adopt reasonable rules, regulations, specifications, and standards; examine and test equipment; address complaints; ask the attorney general to apply for a court order to prohibit or enjoin violations, require compliance with the commission's rules or orders, or recover civil penalties for violations; and bring an action for contempt of its lawful orders. *See, e.g.*, *id.* §§ 104.256, 105.021–.024, 105.051, 121.201–.211, 121.301–.310 (West 2007 & Supp. 2013); 16 TEX. ADMIN. CODE ANN. § 8.215 (2004) (R.R. Comm'n of Tex., Odorization of Gas). The tariff's limitation of liability to private litigants does not conflict with these statutory remedies and enforcement mechanisms, which continue to afford protection to the public even in the absence of actual damage.

Thus, even if a violation of the statutes constituted negligence per se, that does not mean that the tariff limiting CenterPoint's *liability* for that negligence would be invalid. CenterPoint can still comply with both the tariff and the state and federal regulations. Limiting CenterPoint's liability to a private litigant is not an "obstacle" to enforcement of the statute because there are other statutory remedies and enforcement mechanisms. Because there is no conflict between the tariff and state and federal regulations, the elimination of liability for any claim of negligence per se is valid. .

10

For all of the reasons expressed, I respectfully concur in part and dissent in part from Chief Justice Frost's opinion and concur in part and dissent in part from Justice Jamison's opinion.


/s/    Tracy Christopher
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison (Frost, C.J. and Jamison, J., each writing a separate opinion).