Felicita **DEL CARMEN CANAS**, as Next Friend of Yenifer Estefani Canas Escobar, Javier Enrique Canas Escobar and Beatriz Abigail del Carmen Canas, Minors, Appellant

v.

**CENTERPOINT ENERGY RESOURCES CORPORATION,** Appellee.

No. 14–11–01055–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 27, 2013.

Christopher, J., filed opinion concurring in part and dissenting in part, in which Jamison, J., joined in part.

Jamison, J., filed opinion concurring in part and dissenting in part, in which Christopher, J., joined in part.

Frost, C.J., dissented in part.

Alan A. Winograd, Peter Michael Kelly, Houston, for Appellant.

Randy G. Donato, Macey Reasoner Stokes, Houston, for Appellee.

Panel consists of Chief Justice FROST and Justices CHRISTOPHER and JAMISON.

## OPINION

KEM THOMPSON FROST, Chief Justice.

This is an appeal from a summary judgment in a wrongful-death action in which the decedent's children asserted claims against a natural gas provider based upon negligence, negligence per se, strict liability, gross negligence, negligent misrepresentation, and intentional misrepresentation. The trial court dismissed all claims. On appeal, the three-member panel of this court is fractured, resulting in three separate opinions, two of which are part majority (those authored by Chief Justice Frost and Justice Christopher), and all of which are part dissents. Though the panel members disagree about much of the analysis, at least two of the three panel members

agree with respect to the proper judgment for each claim.

As to the claims based upon negligence, negligence per se, and strict liability, this court affirms the trial court's judgment. As to these claims, section IV.A. of this opinion is a plurality opinion, with Justice Christopher concurring in the judgment, and Justice Jamison concurring in part in the judgment and dissenting in part. As to the gross-negligence claim, this court reverses the trial court's judgment and remands for further proceedings consistent with section C. of Justice Christopher's opinion, which is a majority opinion of the court as to the gross-negligence claim. Section IV.B. of this opinion is a dissenting opinion as to the gross-negligence claim. As to the intentional-misrepresentation and negligent-misrepresentation claims, this court reverses the trial court's judgment and remands for further proceedings consistent with section IV.C. of this opinion, which is a majority opinion of the court as to these two claims. As to the intentional-misrepresentation and negligent-misrepresentation claims, Justice Christopher concurs in the judgment as to the intentional-misrepresentation claim and dissents as to the negligent-misrepresentation claim.

In section IV.A. of this opinion, Chief Justice Frost concludes that the limitation of liability in the natural gas provider's tariff is reasonable and enforceable under the applicable legal standard for the filed-rate doctrine and that the trial court did not err to the extent it granted summary judgment based upon the tariff's limitation of liability regarding the claims based upon negligence, negligence per se, and strict liability. As to part of the gross-negligence claim, Chief Justice Frost concludes that the trial court's summary judgment should be affirmed because the plaintiffs have not challenged one of the summary-judgment grounds on appeal, and Chief Justice Frost dissents to the extent that this court affirms the trial court's judgment as to this part of the gross-negligence claim. But, Chief Justice Frost concludes that it is proper for this court to reverse and remand the remainder of this claim. In section IV.C. of this opinion, the court, addressing the plaintiffs' intentional-misrepresentation and negligent-misrepresentation claims, determines that that trial court erred in granting summary judgment as to these claims, which the plaintiffs added after the defendant filed its summary-judgment motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Felicita Del Carmen Canas, as next friend of Yenifer Estefani Canas Escobar, Javier Enrique Canas Escobar and Beatriz Abigail Del Carmen Canas, Minors (hereinafter the "Canas Parties") filed a wrongful death action against appellee/defendant CenterPoint Energy Resources Corporation (hereinafter "CenterPoint"). In their live petition the Canas Parties make the following allegations:

- On March 2, 2007, Guadalupe Del Carmen Canas ("Canas") was in her residence, a garage apartment located behind a house in Houston. Mary Betancourt owned both the house and the garage apartment.

- CenterPoint owned and operated the natural gas entering Canas's residence.

- Natural gas leaked from an underground corroded gas line located on the exterior of Betancourt's house, migrated underground through the soil, and into Canas's garage apartment, filling the apartment with dangerous levels of gas.

- As the gas migrated underground into Canas's residence, it became odorless or insufficiently odorized.

The odorant placed in the gas by CenterPoint was adsorbed by the soil.

- Rust and corrosion were visible on the pipes located next to the meter on the outside of the main residence and CenterPoint did not report this corrosion to anyone.

- At no time did CenterPoint warn Canas or Betancourt of the potential for gas to migrate into their homes when a corrosion leak or any other type of leak occurs. CenterPoint also failed to warn Canas or Betancourt that the gas, which migrates underground into structures, can become either deodorized or inadequately odorized, due to the odorant being adsorbed into the soil.

- As a result of the leak and the diminished odorant in the gas, the gas accumulated in the structure and was undetectable until so much gas filled the structure that it reached the lower explosive limit and ignited.

- CenterPoint has known for decades that corrosion in gas lines results in underground gas leaks which can and do cause gas to travel into someone's home or other structure in either an odorless or ineffectively odorized state due to the odorant being adsorbed in the soil. In addition, for at least a decade, CenterPoint's odorant suppliers have told CenterPoint to warn its customers about the dangers of odorant fade, but CenterPoint has failed to do so. CenterPoint has continued to fail to warn its customers, both before and after this incident. CenterPoint is also aware of many other gas explosions which have occurred in the same manner as the explosion in this case.

- An accumulation of gas inside Canas's residence caused an explosion which severely burned and injured Canas. The severe burns and injuries to Canas ultimately led to her death on March 20, 2007.

In their wrongful-death action, the Canas Parties assert claims for negligence, gross negligence, negligence per se, strict liability, intentional misrepresentation, and negligent misrepresentation.

CenterPoint moved for summary judgment on the following grounds:

(1) Under the filed-rate doctrine, all of the Canas Parties' claims for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit.

(2) There is no evidence of CenterPoint's actual knowledge of a dangerous condition on Betancourt's property that caused the fire in question and therefore the Canas Parties have not established that CenterPoint owed any duty to Canas regarding such dangerous conditions.

(3) Even absent any tariff, CenterPoint has no negligence liability to the Canas Parties because CenterPoint has no duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and because CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property. Because CenterPoint has no negligence liability to the Canas Parties, it cannot be liable for gross negligence or negligence per se.

(4) CenterPoint cannot be liable for gross negligence because a claim for

gross negligence does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law. The trial court granted CenterPoint's summary-judgment motion in its entirety and dismissed with prejudice all of the Canas Parties' claims. The trial court did not specify the summary-judgment grounds upon which it relied.

## II. ISSUES PRESENTED

On appeal, the Canas Parties present the following issues:

(1) The trial court erred in granting a final summary judgment dismissing all of the Canas Parties' claims against CenterPoint.

(2) CenterPoint's summary-judgment motion is directed at theories and claims not asserted by the Canas Parties in their petition. Because the motion does not specifically address the Canas Parties' claims, the trial court should not have granted it.

(3) The trial court erred in granting summary judgment as to the misrepresentation claims that the Canas Parties added after CenterPoint filed its summary-judgment motion.

(4) The trial court erred in applying the filed-rate doctrine to this case because the tariff in question is unreasonable as applied to these facts, and in contravention of the carefully constructed regulatory scheme governing natural gas safety.

(5) The trial court erred in granting summary judgment as to the Canas Parties' gross-negligence claim.

## III. STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In reviewing a no-evidence summary judgment, this court ascertains whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex.2002). In our de novo review of a trial court's summary judgment, this court considers all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, the summary judgment must be affirmed if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

## IV. ANALYSIS

**A. Did the trial court err in granting summary judgment as to the claims based upon negligence, negligence per se, and strict liability?**

The trial court granted summary judgment on the ground that under the filed-rate doctrine, all of the Canas Parties'

claims for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit.

■■■ The "filed-rate doctrine" applies when state law creates a state agency and a statutory scheme under which the agency determines reasonable rates for the service provided. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex.2002). Under this doctrine, when an administrative agency has approved a tariff containing provisions limiting liability for personal-injury damages, such a liability limitation is presumed reasonable unless a litigant proves otherwise. *See id.* at 220. Thus, under the doctrine, filed tariffs govern a utility's relationship with its customers and have the force and effect of law until suspended or set aside. *See id.* at 217. Additionally, under the filed-rate doctrine, regulated utilities cannot vary a tariff's terms with individual customers, discriminate in providing services, or charge rates other than those properly filed with the appropriate regulatory authority. *See id.* And, a utility's obligations to its customers cannot exceed its duties under a filed tariff. *See id.* It follows, then, that aggrieved customers cannot enforce alleged rights that contradict the tariff's provisions. *See id.* Consequently, the filed-rate doctrine prohibits a customer from suing a utility in contract or tort over issues that are governed by a publicly-filed tariff's terms. *See id.*

■■■ A regulatory agency's rate-making authority authorizes it to approve a tariff's provision limiting liability because a limitation on liability is an inherent part of the rate the utility charges for its services. *See id.* The Supreme Court of Texas has applied the filed-rate doctrine to hold that a tariff provision that limits liability for economic damages arising from a utility's negligence is reasonable and that a tariff

provision that limits liability for personal injury is reasonable. *See id.* at 219–222; *Houston Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 672–75 (Tex. 1999). The high court likewise has determined that a tariff's limitation on liability for personal injury is reasonable because a utility: (1) must provide nondiscriminatory service to all customers within its area; (2) must maintain uniform rates and reduce costs; (3) cannot increase rates for all customers based on losses one specific class of customers incurs; and (4) must comply with administrative regulations. *See Grant*, 73 S.W.3d at 220–21. Courts review a tariff's reasonableness as a question of law. *See id.* at 219.

Under the Gas Utility Regulatory Act, the Texas Legislature codified the filed-rate doctrine in the Texas Utilities Code § 104.005(a). This section states:

A gas utility may not directly or indirectly charge, demand, collect, or receive from a person a greater or lesser compensation for a service provided or to be provided by the utility than the compensation prescribed by the applicable schedule of rates filed under Section 102.151.

Tex. Util.Code § 104.005(a) (West 2013). *Entex, A Div. of Reliant Energy Res. Corp. v. R.R. Comm'n of Tex.*, 18 S.W.3d 858, 863 (Tex.App.-Austin 2000, pet. denied). The Railroad Commission of Texas is vested with all the authority and power of the State of Texas to ensure that gas utilities such as CenterPoint comply with their obligations under the Gas Utility Regulatory Act. *See* Tex. Util.Code § 104.001(a) (West 2013).

The summary-judgment evidence contains the CenterPoint tariff which was in effect on March 2, 2007 (hereinafter, "Tariff"); this Tariff was filed with and approved by the Railroad Commission of Texas, and has the force and effect of law.

*See Grant,* 73 S.W.3d at 222. The Canas Parties do not dispute that the Tariff was in effect at the time of the occurrence made the basis of this suit and contained the following provisions:

14. **ESCAPING GAS**

Immediate notice must be given to Company by Consumer of any escaping gas on Consumer's premises. No flame shall be taken near the point where gas is escaping and as an added precaution, the gas should immediately be shut off at the meter by Consumer. Company shall not be liable for any damage or loss caused by the escape of gas from Consumer's housepiping or Consumer's appliances.

. . .

17. **NON–LIABILITY**

(a) The Company shall not be liable for any loss or damage caused by variation in gas pressure, defects in pipes, connections and appliances, escape or leakage of gas, sticking of valves or regulators, or for any other loss or damage not caused by the Company's negligence arising out of or incident to the furnishing of gas to any Consumer.

(b) Company shall not be liable for any damage or injury resulting from gas or its use after such gas leaves the point of delivery other than damage caused by the fault of the Company in the manner of installation of the service lines, in the manner in which such service lines are repaired by the Company, and in the negligence of the Company in maintaining its meter loop. All other risks after the gas left the point of delivery shall be assumed by Customer, his agents, servants, employees, or other persons.

The Tariff defines "Point of Delivery" as "[t]he point where the gas is measured for delivery into Consumer's housepiping," and "Consumer's Housepiping" as "[a]ll pipe and attached fittings which convey gas from the outlet side of the meter to the Consumer's connection for gas appliances." CenterPoint submitted summary-judgment evidence indicating that the holes in the pipe that the Canas Parties claim caused the gas leak were holes in Betancourt's housepiping, and the Canas Parties stated in their summary-judgment response that the holes that allegedly caused the leak were in a section of pipe that ran underground from the meter to the garage apartment. The Canas Parties have not argued on appeal that the alleged leak occurred before the gas left the Point of Delivery. Thus, it is undisputed that the alleged leak of gas occurred after the gas left the Point of Delivery.[1]

The Tariff also states that, "[u]nless otherwise expressly stated, these rules apply to all Consumers regardless of classification, except insofar as they are changed by or are in conflict with any statute of the State of Texas, valid municipal ordinance, valid final order of any court or of the Railroad Commission of Texas, or written contract executed by [CenterPoint], in which case such statute, ordinance, order or contract shall control to the extent that it is applicable to the Consumer(s) in question." The Canas Parties do not assert that the limitation of liability in the Tariff conflicts with a Texas statute, municipal ordinance, court order, Railroad Commission order, or written contract executed by CenterPoint, and the summary-judgment evidence does not raise any such conflict.

On appeal, the Canas Parties challenge the trial court's summary judgment regarding strict liability, common-law negli-

---

**1.** The Canas Parties also agree that Canas was a consumer or customer of CenterPoint.

gence, and negligence per se by asserting (1) the trial court should not have granted summary judgment because CenterPoint's summary-judgment motion is directed at theories and claims not asserted by the Canas Parties in their petition; (2) the trial court erred in enforcing the Tariff's limitation of liability because the Tariff is unreasonable as applied to these facts, and (3) the trial court erred in enforcing the Tariff's limitation of liability because this limitation contravenes the carefully constructed regulatory scheme governing natural gas safety. These arguments are addressed seriatim.

■■■■■ On appeal, the Canas Parties assert that "CenterPoint is liable because it failed to warn [Canas] and [Betancourt] of the dangers of odorant fade" and that "nowhere in the petition is there an allegation that CenterPoint is liable for any other reason." Though the Canas Parties allege in the petition that CenterPoint is liable based upon its alleged failure to warn Canas and Betancourt of the dangers of odorant fade, the Canas Parties allege other acts and omissions as a basis for liability. The Canas Parties assert that the summary-judgment grounds in CenterPoint's motion were directed at theories and claims not asserted by the Canas Parties and that these grounds were not directed at the claims based upon CenterPoint's alleged failure to warn Canas and Betancourt of the dangers of odorant fade. This court cannot affirm the trial court's summary judgment on a ground not stated in the summary-judgment motion. *See Stiles v. Resolution Trust Corp.*, 867

S.W.2d 24, 26 (Tex.1993). Even so, one of the grounds stated in CenterPoint's summary-judgment motion is that under the filed-rate doctrine, all of the Canas Parties' claims for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit. This ground was sufficiently broad to cover the Canas Parties' claims seeking recovery based upon strict liability, common-law negligence, and negligence per se. *See Nall v. Plunkett*, 404 S.W.3d 552, 554–56 (Tex.2013) (holding that summary-judgment grounds were broad enough to cover both social-host and undertaking theories of negligence) (per curiam); *Williams v. Sable*, No. 14–09–00806–CV, 2011 WL 238288, at *3 (Tex.App.-Houston [14th Dist.] Jan. 25, 2011, no pet.) (concluding that negligence per se is not a separate claim that exists independently of a common-law negligence claim, rather it is merely one method of proving a breach of duty) (mem. op.); *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (same as *Williams*). Accordingly, it is proper for this court to overrule the Canas Parties' second issue as to these claims.

■■■■ Under their fourth issue, the Canas Parties assert various arguments in support of the proposition that the Tariff's limitation of liability is unreasonable. Construing the provisions of the Tariff as a whole, it provides that CenterPoint may not be held liable under negligence[2] or strict-liability claims for any damage or injury resulting from gas or its use after the gas leaves the Point of Delivery, other

---

**2.** This conclusion applies both as to negligence claims based upon common-law negligence and negligence claims based upon negligence per se. In the negligence per se part of their petition, the Canas Parties allege that CenterPoint's alleged violation of various regulations proximately caused Canas's death, resulting in their wrongful-death damages. The regulations that CenterPoint allegedly violated include (1) title 49, sections 192.616, 192.617, and 192.625 of the Code of Federal Regulations, (2) "Texas Administrative Code § 8.1(b)," (3) "Texas Administrative Code § 8.215(a)(1)," (4) "Texas Administrative Code § 8.215(c)(3)," and (5) "Texas Administrative Code § 8.220(a)."

than (1) damage caused by the fault of CenterPoint in the manner of installation of the service lines, (2) damage caused by the fault of CenterPoint in the manner in which CenterPoint repaired such service lines, and (3) damage caused by CenterPoint's negligence in maintaining its meter loop. Because it is undisputed that the alleged leak of gas occurred after the gas left the Point of Delivery, the actual damages sought by the Canas Parties allegedly resulted from gas or its use after the gas left the Point of Delivery.[3] The Canas Parties have not alleged any damages that fall into any of the three exceptions to the Tariff's limitation of CenterPoint's liability regarding such damages, and they do not argue on appeal that any of their claims fall under one of these three exceptions. Thus, the Tariff precludes the Canas Parties' recovery under their negligence, negligence per se, and strict-liability claims unless the Canas Parties established that the limitation of liability in the Tariff is unreasonable. *See Grant*, 73 S.W.3d at 219–22.

 The Canas Parties assert that this limitation is unreasonable and unenforceable in its entirety because it purports to limit liability for CenterPoint's gross negligence. Like the tariff that the *Grant* court concluded was reasonable, the Tariff does not exclude personal-injury claims against CenterPoint that arise from CenterPoint's negligence in all contexts. *See id.* at 220. As discussed below, as in *Grant*, this court does not have before it the issue of whether the Tariff limits liability for personal-injury claims based upon CenterPoint's alleged gross negligence or willful misconduct. *See id.* at 219–22. But, the tariff in *Grant* contained an express provision stating that the limitation of liability did not apply to damages caused by the gross negligence or willful misconduct of the utility company. *See id.* at 220. Notably, the Tariff does not contain such an express exception to the limitation of liability, nor does it contain any express reference to gross negligence or willful misconduct. The facts in today's case are not the same as those in *Grant*. The parties have not cited, nor has research revealed, any Texas case addressing limitation-of-liability provisions in a tariff under these circumstances.

Nonetheless, under the legal standard applied by the Supreme Court of Texas in *Grant*, the limitation of liability in the Tariff as to negligence and strict-liability claims is reasonable and enforceable, regardless of whether the Tariff covers claims based on gross negligence and willful misconduct or whether such a limitation of liability is reasonable. *See id.* at 219–22. If the limitation of liability in the Tariff were construed not to apply to gross-negligence and willful-misconduct claims, then, as in *Grant*, these claims would be available and this availability would support the conclusion that the limitation of liability is reasonable. The parties have not cited, and research has not revealed, any Texas case addressing whether the presence in a tariff of an unreasonable and unenforceable limitation of liability for certain claims would make the entire limitation of liability unenforceable. If the limitation of liability in the Tariff were construed to apply to gross-

---

**3.** The Canas Parties assert they are not suing CenterPoint for allowing the gas leak but for failing to warn of the dangers of odorant fade. Though the Canas Parties allege that CenterPoint's alleged failure to warn of the dangers of odorant fade proximately caused Canas's death, they also allege that Canas's death was caused by the ignition of gas that leaked from an underground corroded gas line, and it is undisputed that this alleged gas leak occurred after the gas left the Point of Delivery. Thus, the Canas Parties' claims are for damage or injury resulting from gas or its use after the gas left the Point of Delivery.

negligence and willful-misconduct claims and the limitation of liability for such claims were held to be unreasonable and unenforceable, then Texas courts would hold that, the limitation of liability still may be enforced as to negligence and strict-liability claims. *See Danisco Ingredients USA, Inc. v. Kansas City Power & Light Company,* 267 Kan. 760, 769–74, 986 P.2d 377 (Kan.1999). Thus, in this second circumstance, claims based on gross negligence and willful misconduct would be available, as in *Grant,* and this availability would support the conclusion that the limitation of liability is reasonable. The third possibility is that the limitation of liability in the Tariff is construed to apply to claims based on gross negligence and willful misconduct, and the limitation of liability as to such claims is held to be reasonable and enforceable. In this event, if the limitation of liability as to gross-negligence and willful-misconduct claims is reasonable, then the limitation of liability as to negligence and strict-liability claims necessarily would be reasonable and enforceable. Under the legal standard applied by the Supreme Court of Texas in *Grant,* the limitation of liability in the Tariff as to negligence and strict-liability claims is reasonable and enforceable. It is not necessary to decide whether the limitation of liability in the Tariff covers claims based on gross negligence and willful misconduct or whether such a limitation of liability is reasonable, and no position on this issue is taken in this opinion.[4]

■ The Canas Parties also assert that if paragraph 14 of the Tariff were "an entirely enforceable exculpatory clause," it would relieve CenterPoint of its duty to provide natural gas that is readily detectible to a person with a normal sense of smell, as required by title 49, section 192.625 of the Code of Federal Regulations and title 16, section 8.215 of the Texas Administrative Code. The Canas Parties assert that giving effect to paragraphs 14 and 17(b) of the Tariff in this instance would vitiate this "carefully crafted regulatory scheme," as well as title 49, sections 192.616 and 192.16 of the Code of Federal Regulations.

But, none of these regulations provide that a failure to comply with the regulation will result in tort liability to parties injured as a result of the failure to comply. The parties have not cited, and research has not revealed, any case in which a court holds that a failure to comply with any of these regulations will result in tort liability to parties injured as a result of such a failure to comply. The enforcement of the Tariff's limitation of liability as to the Canas Parties' claims based on negligence, negligence per se, and strict-liability does not vitiate or conflict with these regulations or relieve CenterPoint of any obligation to comply with these regulations.

The Canas Parties also note that, under Paragraph 14 of the Tariff, "[i]mmediate notice must be given to Company by Consumer of any escaping gas on Consumer's premises." The Canas Parties assert that this requirement presumes that consumers will recognize the escape of gas by the presence of odorant. The Canas Parties suggest that the Tariff's limitation of liability should not apply to cases allegedly involving odorant fade, because Paragraph 14 presumes the presence of odorant. Though odorant certainly assists consumers in that it makes it more likely that a

---

4. Justice Christopher addresses this issue and concludes that a limitation of liability for personal injuries caused by CenterPoint's gross negligence or willful misconduct is unenforceable. She states that she disagrees with the analysis in this opinion to the contrary. *See post* at pp. 315–17. Because this opinion does not address this issue, there is no contrary analysis.

consumer will be aware of escaping gas, a consumer could become aware of escaping gas even without detecting the odorant. In any event, a consumer cannot give CenterPoint notice of a fact of which the consumer is not aware. This notification requirement does not remove claims involving alleged odorant fade from the scope of the Tariff's limitation of liability.

As to the Canas Parties' claims based upon negligence, negligence per se, and strict liability, the Tariff's limitation of liability is reasonable and enforceable under the legal standard applied by the Supreme Court of Texas in *Grant. See Grant,* 73 S.W.3d at 219–22. The Canas Parties' appellate arguments as to why the trial court erred in granting summary judgment regarding common-law negligence, negligence per se, and strict liability lack merit. Thus, the trial court did not err to the extent it granted summary judgment as to these claims based upon the Tariff's limitation of liability. Accordingly, it is correct for this court to overrule the Canas Parties' fourth issue as well as their first issue to the extent that issue addresses the Canas Parties' claims based upon negligence, per negligence per se, and strict liability.

**B. Did the trial court err in granting summary judgment as to the Canas Parties' gross negligence claim?**

At no point in its summary-judgment motion did CenterPoint assert that the Tariff bars the Canas Parties' gross-negligence claim.[5] Instead, as to this claim,[6] CenterPoint asserted the following summary-judgment grounds in its motion: (1) even absent any tariff, CenterPoint has no negligence liability to the Canas Parties, and therefore no gross-negligence liability, because under the common law CenterPoint has no duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and because CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property ("First Ground"); (2) a gross-negligence claim does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law ("Second Ground").

In their appellants' brief, the Canas Parties assert the following arguments that relate to the gross-negligence claim: (1) CenterPoint's motion should not have been granted because it is directed at theories and claims not asserted by the Canas Parties in their petition rather than their claim based on an alleged failure to warn of deodorized gas; (2) even if the Tariff bars the Canas Parties' negligence claim, that bar does not mean that the Canas Parties cannot recover under their gross-

5. CenterPoint asserts that it specifically moved for summary judgment based on the filed-rate doctrine as to "all of the [Canas Parties'] negligence claims, including gross negligence." Justices Christopher and Jamison agree. But, for the purpose of determining summary-judgment grounds, gross-negligence claims should not be considered to be included within the scope of the term "negligence claims." *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 22 (Tex.1994) (emphasizing important distinctions between gross negligence and negligence); *Van Voris v. Team Chop Shop, LLC,* 402 S.W.3d 915, 926

(Tex.App.-Dallas 2013, no pet.) (same as *Moriel* ). In its summary-judgment motion, CenterPoint did not state as a ground that the filed-rate doctrine or the Tariff bars the Canas Parties' gross-negligence claim. Therefore, the trial court's judgment cannot be affirmed on such a ground. *See Stiles,* 867 S.W.2d at 26.

6. In their live pleading, the Canas Parties seek to recover both actual and exemplary damages based upon CenterPoint's alleged gross negligence.

negligence claim; (3) the trial court erred to the extent it held that the Tariff barred the Canas Parties' gross-negligence claim; (4) CenterPoint's grounds based on the absence of a duty to inspect or repair the housepiping cannot support the judgment because the Canas Parties' claims do not rely on such a duty; (5) this court should reverse and remand the gross-negligence claim because CenterPoint made no mention of this claim in its summary-judgment reply; and (6) the Canas Parties do not allege that CenterPoint had actual knowledge of any dangerous condition on the property, and such an allegation is not an element of any claim asserted in the Canas Parties' petition.

The Canas Parties' second and third arguments do not apply to the First Ground. In their fifth argument, the Canas Parties assert that, by failing to mention the gross-negligence claim in its summary-judgment reply in the trial court, CenterPoint implicitly conceded that the gross-negligence claim should have survived summary judgment and therefore this court should reverse the summary judgment as to this claim. This argument lacks merit. CenterPoint's failure to mention the gross-negligence claim in its summary-judgment reply did not amount to a concession that CenterPoint was not entitled to summary judgment as to this claim.

In their first, fourth, and sixth arguments, the Canas Parties assert that (1) CenterPoint's summary-judgment grounds did not attack any theory or claim asserted in the Canas Parties' petition; (2) the Canas Parties make no complaint about a leak in the housepiping; (3) in their claims, the Canas Parties do not rely on a duty by CenterPoint to inspect or repair the housepiping; and (4) the Canas Parties do not allege that CenterPoint had actual knowledge of any dangerous condition on the property, nor is such an allegation an element of any claim asserted in the Canas Parties' petition. But, liberally construing the Canas Parties' live pleading, some of the allegations are based on dangerous conditions.[7] On appeal, the Canas Parties have not challenged the First Ground. Accordingly, as to the First Ground, this court should overrule the fifth issue and the correlative part of the first and second issues.[8] *See In re A.M.P.*, 368 S.W.3d 842, 845 (Tex.App.-Houston [14th Dist.] 2012, no pet.) (affirming summarily trial court's summary judgment as to one claim because appellant did not challenge on appeal all independent summary-judgment grounds as to that claim). This court should affirm the trial court's summary judgment to the extent that the Canas Parties base their gross-negligence claim on a duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and to the extent that the Canas Parties seek to impose gross-negligence liability on CenterPoint for a dangerous condition on Betancourt's property.[9] Because it does not do so, I respectfully dissent to this part of the court's judgment.

---

7. For example, the Canas Parties allege that CenterPoint was negligent and grossly negligent in various ways, including when it "failed to warn the homeowner about migrating gas from underground gas leaks" and when it "failed to warn [Canas] about migrating gas from underground gas leaks."

8. Because the Canas Parties have not challenged the First Ground, this court need not and should not address the merits of this ground.

9. This court would not be affirming the part of the trial court's judgment in which the trial court dismissed the Canas Parties' gross-negligence claim based on CenterPoint's alleged gross negligence in failing to warn Canas or Betancourt of the dangers of odorant fade.

In the Second Ground, CenterPoint asserts that it cannot be held liable for gross negligence because a claim for gross negligence does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law. To the extent the Second Ground is based on the failure of the negligence claim because it is barred by the Tariff, this ground lacks merit. When liability for negligence or strict liability is barred by a limitation of liability in a utility's tariff, this bar does not, by itself, compel the conclusion that gross-negligence claims are also barred on the theory that gross-negligence claims do not exist independent of an underlying negligence claim. *See Grant*, 73 S.W.3d at 215, 220–22 (holding that limitation of liability in utility's tariff was reasonable and unenforceable and barred negligence claims, while noting that utility still was subject to gross-negligence liability). This ground fails under the reasoning of the *Grant* court. *See Grant*, 73 S.W.3d at 220–22. In the context of explaining why the limitation of liability in a utility's tariff barred negligence claims, the *Grant* court noted that the utility still was subject to gross-negligence liability. *See id.* The plaintiff in *Grant* did not assert a gross-negligence claim. *See id.* at 214–15. Nonetheless, if a tariff's bar as to negligence liability necessarily meant that any gross-negligence claims also were barred, then the *Grant* court would not have stated that the utility still was subject to potential liability for gross negligence. *See id.* at 220–22. In other contexts, the absence of a common-law negligence duty or the plaintiff's failure to prove a negligence claim also may preclude recovery under a gross-negligence claim. *See RT Realty, L.P. v. Tex. Util. Elec. Co.*, 181 S.W.3d 905, 914–16 (Tex.App.-Dallas 2006, no pet.) (holding that, because claimant offered no evidence that electric utility owed a negligence duty

the gross negligence claim failed as a matter of law); *Wortham v. Dow Chemical Co.*, 179 S.W.3d 189, 202–03 & n. 16 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (stating that a claimant who cannot support a negligence claim cannot succeed on a gross-negligence claim and concluding that there was no evidence raising a fact issue as to plaintiff's negligence claims); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174–78 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that, because defendant did not owe negligence duty to plaintiff there could be no liability for gross negligence). The only summary-judgment ground other than the filed-rate doctrine directed at the negligence claims was that under the common law CenterPoint has no negligence duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property. But, for the reasons stated above, this court should affirm the trial court's summary judgment as to the gross-negligence claim to the extent that the Canas Parties base this claim on a duty to inspect the customer's wiring, appliances, or the like before supplying gas to the customer and to the extent that the Canas Parties seek to impose gross-negligence liability on CenterPoint for a dangerous condition on Betancourt's property. Therefore, as to the remaining part of the gross-negligence claim, the only summary-judgment ground asserted regarding the corresponding negligence claim was the filed-rate doctrine. In this situation, the cases upon which CenterPoint relies are not on point. *See RT Realty, L.P.*, 181 S.W.3d at 914–16; *Wortham*, 179 S.W.3d at 202–03 & n. 16; *Humphrey*, 880 S.W.2d at 174–78. In this context, when liability for negligence is barred by a limitation of

liability in a utility's tariff, this bar does not, alone, compel the conclusion that gross-negligence claims are also barred on the theory that gross-negligence claims do not exist independent of a negligence claim. *See Grant*, 73 S.W.3d at 215, 220–22. *See also Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 924–26 (Tex. App.-Dallas 2013, no pet.) (holding that gross-negligence claim did not fail, even though the negligence claim was barred by an enforceable pre-injury release). Because CenterPoint asserted no meritorious summary-judgment ground as to the remainder of the gross-negligence claim, it is correct for this court to sustain the fifth issue and the correlative part of the first issue to this extent, reverse the trial court's judgment as to the remainder of this claim, and remand for further proceedings.[10]

## C. Did the trial court err in granting summary judgment as to the Canas Parties' misrepresentation claims?

After CenterPoint filed its summary-judgment motion, the Canas Parties amended their petition and added misrepresentation claims. Regarding these claims, the Canas Parties alleged that CenterPoint represents to the public that the natural gas it supplies contains an odorant which gives a warning to its customers if a leak occurs, so they can take necessary actions for their safety. The Canas Parties allege that CenterPoint knows that sometimes the gas will migrate through the soil, either becoming insufficiently or completely deodorized, allegedly resulting in a situation in which the public has either no warning or too-little warning of a gas leak, even though such a leak may be occurring in their vicinity. According to the Canas Parties, this misrepresentation involves a material fact and Canas or Betancourt relied upon this representation in purchasing the natural gas in question. Under a liberal construction of their petition, the Canas Parties have alleged claims for intentional misrepresentation and for negligent misrepresentation.

 Reversal is not always necessary when a party amends her petition after an opposing party files a motion for summary judgment if (1) the amended petition essentially reiterates previously pleaded claims, (2) a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, or (3) the grounds in the original motion are broad enough to encompass the newly asserted claims. *See Coterill–Jenkins v. Texas Medical Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.-Houston [14th Dist.] 2012, pet. denied). The Canas Parties added new intentional-misrepresentation and negligent-misrepresentation claims in their amended pleading, in which the Canas Parties did not reiterate previously pleaded claims. No ground asserted in the summary-judgment motion conclusively negates a common element of the newly and previously pleaded claims. In their new claims for negligent misrepresentation and intentional misrepresentation, the Canas Parties added a new allegation that CenterPoint made a material misrepresentation. In the context of this case, these new misrepresentation claims are materially different from the Canas Parties' other claims for negligence, negligence per se, strict liabili-

---

10. Because of this determination, this court need not address the part of the second issue that corresponds to the Second Ground. The remanded portion of the trial court's judgment would include the part in which the trial court dismissed the Canas Parties' gross-negligence claim based on CenterPoint's alleged gross negligence in failing to warn Canas or Bentancourt of the dangers of odorant fade.

ty, and gross negligence. In its summary-judgment reply, CenterPoint noted that the Canas Parties had amended their petition after CenterPoint filed its summary-judgment motion, asserting for the first time a misrepresentation claim. Center-Point then stated, "CenterPoint realizes the Court cannot grant a final summary judgment given this new claim. Center-Point intends to file another summary judgment on this new theory." We conclude that the grounds in CenterPoint's summary-judgment motion are not broad enough to encompass the newly asserted claims for intentional misrepresentation and negligent misrepresentation. Thus, the trial court erred to the extent it granted summary judgment as to these claims.[11] See Coterill–Jenkins, 383 S.W.3d at 592. Accordingly, we sustain the third issue and the first issue, to the extent it addresses these claims; we reverse the trial court's judgment as to the claims for intentional misrepresentation and negligent misrepresentation and remand for further proceedings consistent with section IV.C. of this opinion.

## V. Conclusion

As to the claims based upon negligence, negligence per se, and strict liability, this court affirms the trial court's judgment. As to the gross-negligence claim, this court reverses the portion of the trial court's judgment addressing the gross-negligence claim for the reasons stated in section C of Justice Christopher's opinion, and remands for further proceedings consistent with section C of Justice Christopher's opinion. The trial court erred to the extent it granted summary judgment as to the intentional-misrepresentation and negligent-misrepresentation claims, which

were added after CenterPoint filed its summary judgment motion. Accordingly, this court reverses the portion of the trial court's judgment addressing the intentional-misrepresentation and negligent-misrepresentation claims, and remands for further proceedings consistent with section IV.C. of this opinion.

Chief Justice FROST and Justices CHRISTOPHER and JAMISON (CHRISTOPHER, J. and JAMISON, J., each writing a separate opinion).

TRACY CHRISTOPHER, Justice.

I respectfully concur with portions of Chief Justice Frost's opinion and with Justice Jamison's opinion and dissent from other portions as follows:

- I agree with Chief Justice Frost's conclusion that the tariff limits CenterPoint's liability for negligence and strict liability, but do not agree with all of her analysis.
- I agree with Chief Justice Frost that CenterPoint's summary-judgment motion failed to address an intentional-misrepresentation issue and that this issue should be remanded, but I do not agree with all of her analysis. I believe that the summary-judgment motion covered the newly added negligent-misrepresentation claim and that this portion of the judgment should be affirmed; I therefore disagree with both Chief Justice Frost and Justice Jamison on this point.
- I disagree with Chief Justice Frost's disposition of the gross-negligence claim and would remand the entire gross-negligence issue to the trial court. I agree with Justice Jamison on this point.

11. In reversing the summary judgment as to the intentional-misrepresentation and negligent-misrepresentation claims, we do not comment on or address the merits of these claims.

- I agree that the Canas Parties' negligence per se claims do not survive the tariff's limitations, but I disagree with Chief Justice Frost's reasoning.

## A. Negligence and Strict Liability

CenterPoint moved for summary judgment on both traditional and no-evidence grounds. In its motion, CenterPoint claimed that its tariff barred the plaintiffs' claims for strict liability and negligence because their claims did not fall within the exceptions of the tariff. I agree. The Texas Supreme Court concluded in *Southwestern Electric Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex.2002) that a tariff can limit liability for personal injuries. CenterPoint's tariff does exactly that.

■ *Grant* also requires that the tariff be narrowly drawn and provide a remedy for gross negligence and willful misconduct. *Id.* at 220. I would enforce the tariff as to the negligence and strict liability claims because it is narrowly drawn. But as discussed more fully below, I would conclude that limiting liability for personal injuries caused by CenterPoint's gross negligence or willful misconduct is against public policy and that such a limitation is unenforceable. I disagree with Chief Justice Frost's analysis to the contrary.

## B. Misrepresentation

After CenterPoint moved for summary judgment, the Canas Parties amended their petition to assert a claim for misrepresentation. Although the Canas Parties' pleading does not use the word *intentional* in connection with the misrepresentation claim, Chief Justice Frost concludes that they asserted a claim for *intentional* misrepresentation.

To the extent that the Canas Parties alleged intentional misrepresentation, I agree with Chief Justice Frost and Justice Jamison that the claim should be remanded because the tariff cannot limit liability for willful misconduct, as discussed below. For the sake of clarity, however, I would further hold that any negligent-misrepresentation claim encompassed by their pleading is barred by the tariff and summary judgment is appropriate on that claim even if not specifically mentioned in the original summary-judgment motion. *See Coterill–Jenkins v. Tex. Med. Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex.App.-Houston [14th Dist.] 2012, pet. denied) (reversal of a summary judgment on a claim not expressly addressed in the motion is not required if a ground asserted in the motion "conclusively negates a common element of the newly and previously asserted claims").

## C. Gross Negligence

■ In its motion for summary judgment, CenterPoint asserted that a defendant that is not liable for ordinary negligence cannot be liable for gross negligence, and reasoned that because the tariff limits its liability in a way that prevents the Canas Parties from prevailing on their negligence cause of action under the facts alleged, their gross-negligence claim necessarily fails as well. But CenterPoint did not prove that it was not negligent; it proved that its tariff relieves it of *liability* for any such negligence. In this respect, I agree with Chief Justice Frost: when liability for negligence is barred by a limitation of liability in a utility's tariff, that bar does not automatically defeat a claim for gross negligence. *See Grant*, 73 S.W.3d at 215, 220–22. *See also Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 924–26 (Tex.App.-Dallas 2013, no pet.) (holding that a gross-negligence claim did not fail, even though the negligence claim was barred by an enforceable pre-injury release). In my view, however,

Chief Justice Frost has unnecessarily and confusingly parsed the Canas Parties' gross-negligence claims in a manner not briefed by the parties. I disagree with her analysis and with any partial affirmance of the Canas Parties' claims of gross negligence.

In its motion for summary judgment, CenterPoint raised the two following more specific grounds to support its contention that it was not negligent at all, and I would conclude that neither ground supports even partial affirmance of the judgment as it pertains to the Canas Parties' gross-negligence claims.

First, CenterPoint argued that by law it had no duty to consumers to inspect for leaks from pipes on the consumer's side of the meter, and that the accident was caused by a leak on that side. While this is true, no one contends that the leak was the *sole* cause of the decedent's injuries. The Canas Parties allege that another cause of the injury was the failure to adequately odorize the gas or to adequately warn of odorant fade, omissions that resulted in the decedent's failure to detect the presence of gas in time to escape. Neither of these claims is defeated by the fact that an additional cause of the accident or injury was a leak on the consumer side of the meter.

Second, CenterPoint argued that it was not negligent because it had no knowledge of a dangerous condition on the property. On this point, CenterPoint moved for a no—evidence summary judgment. But here, too, CenterPoint's failure to warn of a danger of which it was unaware—a leak in the consumer's housepiping—does not relieve it of responsibility to warn of another danger of which it was aware—odorant fade. On this point, the Canas Parties presented some evidence that CenterPoint was aware that the odorant that it used could fade, and that consumers therefore could not rely on the odorant to alert them to the presence of escaped gas creating a dangerous condition. The Canas Parties also presented evidence that CenterPoint is aware that other companies warn of this condition.

Finally I disagree with footnote 7 of Chief Justice Frost's opinion, in which she states that the grounds for summary judgment raised in CenterPoint's motion do not include the argument that the tariff itself eliminates any gross-negligence claim. I think that issue was raised by CenterPoint and should be decided by this court.

The Texas Supreme Court first considered limitations of liability in a tariff in *Houston Lighting & Power Co. v. Auchan USA, Inc.,* 995 S.W.2d 668, 672–75 (Tex. 1999). However in *Auchan,* the plaintiff abandoned its gross-negligence claim and the court expressed no opinion as to whether a tariff may limit liability for gross negligence or willful misconduct. *Id.* at 675. In *Grant,* the tariff at issue expressly excepted a cause of action for gross negligence from its limitation of liability, and the court found the tariff reasonable. *Grant,* 73 S.W.3d at 220. I think the language in *Grant* supports a categorical holding that a reasonable tariff cannot eliminate liability for personal injuries caused by the utility's gross negligence or willful misconduct. *See id.* ("[The utility's] tariff provision limiting its personal-injury liability is reasonable because the provision is narrowly drawn *and* provides a remedy for [the utility's] gross negligence or willful misconduct.") (emphasis added). By using the word *and* in that sentence, the court held that both a narrowly drawn provision and a preservation of a remedy for gross negligence and willful misconduct are necessary to a reasonable tariff.

Because this tariff acts as a pre-injury release, cases dealing with such releases also are instructive. Chief Justice Frost cites with approval a decision in which the Fifth Court of Appeals held that a pre-injury release of personal-injury claims based on gross negligence was void on public-policy grounds. *See Van Voris*, 402 S.W.3d at 924–26. In reaching that decision, the court followed the reasoning of the Ninth Court of Appeals in *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex.App.-Beaumont 1986, no writ). Significantly, this court has repeatedly reached the same result. *See Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ("[W]hile pre-accident waivers of gross negligence are against public policy, post-accident releases are not." (citing *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex.1997) (per curiam))); *see also Rosen v. Nat'l Hot Rod Ass'n*, No. 14–94–00775–CV, 1995 WL 755712, at *7 (Tex. App.-Houston [14th Dist.] Dec. 21, 1995, writ denied) (not designated for publication).[1] Indeed, both *Sydlik* and *Rosen* were cited in *Van Voris*. Moreover, this court's position is not unusual. *See, e.g., Tex. Moto–Plex, Inc. v. Phelps*, No. 11–03–00336–CV, 2006 WL 246520, at *2 (Tex.

App.-Eastland Feb. 2, 2006, no pet.) (mem. op.) (reaching the same result). *See generally* Ryan S. Holcomb, *The Validity and Effectiveness of Pre–Injury Releases of Gross Negligence in Texas*, 50 Baylor L.Rev. 233 (1998). *See also Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir.1982) ("Gross negligence … will invalidate an exemption from liability…."); Restatement (Second) of Contracts § 195(1) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."). And although there is a split among the intermediate courts of appeals on this analogous issue, it nevertheless is a matter on which this court has spoken, and I believe that we should follow the same reasoning here.

I agree, however, that the tariff's failure to allow a private litigant to recover for gross negligence and willful misconduct does not invalidate the entire tariff. As courts have held in the analogous context of pre-injury releases, a release is still valid as to ordinary negligence even where the court refuses to apply it to claims of gross negligence. *See Van Voris*, 402 S.W.3d at 926; *Tex. Moto–Plex, Inc.*, No.

1. In reaching this result, we expressly rejected the contrary holding of *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex. App.-San Antonio 1994, writ denied). In *Newman*, the court held that exemplary damages for gross negligence were unavailable where a pre-injury release barred recovery of actual damages for simple negligence. *But see Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987) (explaining in the context of the Workers' Compensation Act that a widow who obtained a finding of her late husband's employer's gross negligence and offered evidence of actual damages could recover exemplary damages, despite the fact that the Act barred recovery of actual damages and no finding of actual damages was requested); *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex.1985) (ex-

plaining that even though the plaintiff recovered no actual damages, a *finding* of actual damages supported the award of exemplary damages, and stating that "[e]ven in cases where actual damages are not recoverable, it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damage."); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 459 (Tex.App.-El Paso 2006, no pet.) (holding that appellants were entitled to recover punitive damages based on a jury finding of actual damages, even though a settlement credit eliminated any recovery of actual damages). The First Court of Appeals, however, has followed *Newman*. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 127 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

11–03–00336–CV, 2006 WL 246520, at *2; *Golden Triangle Raceway,* 708 S.W.2d at 576. I similarly would conclude that the tariff is not completely invalid because of its failure to provide a remedy for gross negligence or intentional misconduct, but would refuse to enforce a limitation of liability for such claims. I accordingly would reverse the summary judgment as to all such claims and remand them to the trial court.

## D. Negligence Per Se

As it pertains to the Canas Parties' claim for negligence per se, CenterPoint's summary-judgment motion is based on its position that CenterPoint has no duty to inspect a consumer's housepiping before supplying gas to the consumer. While it is true that CenterPoint has no such duty, this argument does not address the Canas Parties' claims concerning the duty to odorize the gas or to warn of odorant fade. The Canas Parties pleaded that Center-Point violated a number of federal and state regulations concerning the duty to

odorize the gas, to test the strength of that odorant at the system's extremities, and to supply certain warnings to the consumer. In its summary-judgment motion, Center-Point did not establish or even argue that it complied with all of these federal and state laws.

In summarily disposing of the Canas Parties' cause of action for negligence per se, Chief Justice Frost relies on two grounds. First, she summarily concludes—without analysis—that the regulations cannot serve as the basis for a private cause of action for negligence per se.[2] I do not believe it is necessary to decide this question, because for the purpose of this appeal, we can assume, without deciding, that the statutes and regulations cited by the Canas Parties could provide the standard by which CenterPoint's duty is measured in a claim for negligence per se.

Second, she assumes that the tariff's limitation of liability is broad enough to cover CenterPoint's alleged failure to comply with these regulations. But this result cannot be assumed, because if the tariff's

---

**2.** There are tests that apply in making this determination. In considering whether violation of a state statute gives rise to a claim of negligence per se, Texas courts consider

 (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty;

 (2) whether the statute puts the public on notice by clearly defining the required conduct;

 (3) whether the statute would impose liability without fault;

 (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and

 (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute. *Perry v. S.N.,* 973 S.W.2d 301, 309 (Tex.1998). The analysis is essentially based on principles of tort law.

The determination of whether a duty imposed by federal law gives rise to a private cause of action is different. "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (stating that the "argument in favor of implication of a private right of action based on tort principles … is entirely misplaced"). A private right of action may be addressed by the legislature explicitly or it may be implied based upon "the language and focus of the statute, its legislative history, and its purpose." *Touche Ross,* 442 U.S. at 575–76, 99 S.Ct. 2479. An implied right of action is generally found in the federal context only where "the statute in question at least prohibited certain conduct or created federal rights in favor of private parties." *Id.,* 442 U.S. at 569, 99 S.Ct. 2479.

limitation of liability conflicts with federal or state statutes or regulations, it is the tariff that must yield. I accordingly believe that the question of whether the tariff's limitation of liability eliminates the cause of action for negligence per se is one that cannot be answered without first considering whether this limitation conflicts with federal or state law.

The tariff may have the force and effect of state law, *see Grant*, 73 S.W.3d at 216–17, but federal regulations preempt contrary state law. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 482 (Tex.2010) (citing *City of New York v. FCC*, 486 U.S. 57, 63–64, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988)). *See also* TEX. UTIL.CODE ANN. § 101.008 (West 2007) (providing that the Texas Gas Utility Regulatory Act "shall be construed to apply so as not to conflict with any authority of the United States"). "A state law actually conflicts with a federal law when compliance with both is impossible or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hinton*, 329 S.W.3d at 482 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

Here, contrary state law also would trump contrary provisions in the tariff in much the same way that federal law preempts state law. This is so because CenterPoint's Texas Gas Rate Book provides that "[u]nless otherwise expressly stated, these rules apply to all Consumers ..., except insofar as they are changed by or are in conflict with any statute of the State of Texas ... [or] valid final order of any court, ... in which case such statute, ordinance, [or] order ... shall control...." Thus, I would not conclude that the tariff's limitation-of-liability provision eliminates a claim for negligence per se without first determining whether doing so would conflict with a state or federal statute or regulation.

Although the Canas Parties cited a number of federal and state statutes and regulations in their summary-judgment response and on appeal, they have not identified any that actually conflict with the tariff's limitation of liability. *See, e.g.*, 49 C.F.R. §§ 192.16, 192.616, 192.625; *see also* TEX. UTIL.CODE ANN. § 104.251 (West 2007) ("A gas utility shall furnish service, instrumentalities, and facilities that are safe, adequate, efficient, and reasonable."); 16 TEX. ADMIN. CODE § 8.220(a) (2004) (R.R. Comm'n of Tex., Master Metered Systems) ("Compliance with minimum safety standards required. Master meter operators shall comply with the minimum safety standards in 49 CFR Part 192."). To the extent that any of these provisions impose a duty on CenterPoint, CenterPoint is still required to comply with the regulations under its tariff.

The Railroad Commission has broad authority to ensure that utilities provide "safe, adequate, efficient, and reasonable" service. *See* TEX. UTIL.CODE ANN. § 104.001(a) (West 2007) ("The railroad commission is vested with all the authority and power of this state to ensure compliance with the obligations of gas utilities in this subtitle"). To that end, the Commission can adopt reasonable rules, regulations, specifications, and standards; examine and test equipment; address complaints; ask the attorney general to apply for a court order to prohibit or enjoin violations, require compliance with the commission's rules or orders, or recover civil penalties for violations; and bring an action for contempt of its lawful orders. *See, e.g., id.* §§ 104.256, 105.021–.024, 105.051, 121.201–.211, 121.301–.310 (West 2007 & Supp.2013); 16 TEX. ADMIN. CODE ANN. § 8.215 (2004) (R.R. Comm'n of Tex., Odorization of Gas). The tariff's

limitation of liability to private litigants does not conflict with these statutory remedies and enforcement mechanisms, which continue to afford protection to the public even in the absence of actual damage.

Thus, even if a violation of the statutes constituted negligence per se, that does not mean that the tariff limiting CenterPoint's *liability* for that negligence would be invalid. CenterPoint can still comply with both the tariff and the state and federal regulations. Limiting CenterPoint's liability to a private litigant is not an "obstacle" to enforcement of the statute because there are other statutory remedies and enforcement mechanisms. Because there is no conflict between the tariff and state and federal regulations, the elimination of liability for any claim of negligence per se is valid.

For all of the reasons expressed, I respectfully concur in part and dissent in part from Chief Justice Frost's opinion and concur in part and dissent in part from Justice Jamison's opinion.

(FROST, C.J. and JAMISON, J., each writing a separate opinion).

MARTHA HILL JAMISON, Justice, concurring and dissenting.

I am unable to join either of the other two opinions in their entirety. I write separately for the following reasons.

**Limitations of CenterPoint's Summary–Judgment Motion.** CenterPoint filed a hybrid motion for summary judgment, but the only ground on which it urged a no-evidence point was that the Canas Parties "have offered no evidence that CenterPoint had actual knowledge of any dangerous condition" on the property prior to the fire. My colleagues seem to hold that CenterPoint moved for both traditional and no-evidence summary judgment on all claims, but I respectfully disagree. I would hold that "knowledge of any dangerous condition" is the only element of a cause of action challenged in the no-evidence portion of the summary-judgment motion that the Canas Parties were required to rebut.[1]

My colleagues broadly construe CenterPoint's motion for summary judgment as encompassing theories pled by the Plaintiff, but not mentioned in the motion (odorant fade). I respectfully disagree. Even if the motion encompassed the odorant fade theory, however, CenterPoint was required to bring forth evidence to show the claim is conclusively proved under the filed-rate doctrine or common law, which it did not do. Although CenterPoint argues in its appellate brief that its motion for summary judgment fully addressed the Canas Parties' "failure to warn of odor fade theory," to the contrary, CenterPoint did not address odorant fade in its motion. I would reverse the summary judgment as to the failure to warn of odorant fade theory under negligence, strict liability and negligence per se.[2]

---

1. Moreover, "knowledge of any dangerous condition" is an element of a premises liability claim, while the Canas Parties pled a strict liability claim. A plaintiff alleging negligence by a supplier of chattel must show the supplier "[knew] or ha[d] reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied." *See Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 661 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see also Occidental Permian Ltd. v. Helen Jones Found.*, 333 S.W.3d 392, 410 (Tex.App.-

Amarillo 2011, pet. denied) (acknowledging gas becomes personal property once severed from realty). The Canas Parties presented evidence that CenterPoint had been aware of the problem of odorant fade for more than ten years. Thus, the Canas Parties presented evidence on that issue.

2. In reversing the summary judgment as to any claims, I do not comment on or address the merits of these claims.

**Tariff, as Reformed, Is Reasonable.** I agree that *Southwestern Electric Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002), defines the current outer limits for a "reasonable" tariff provision limiting a utility's personal-injury liability: the provision must be narrowly drawn and provide a remedy for the utility's gross negligence or willful misconduct. I respectfully disagree with Chief Justice Frost that the tariff "is reasonable and enforceable regardless of whether it covers claims based on gross negligence and willful misconduct." I join Justice Christopher's reasoning in Section A of her opinion. To the extent the tariff at issue is silent as to gross negligence and willful misconduct, I would reform it to permit claims for those causes of action. I would hold that the tariff, as reformed, is reasonable, overruling the Canas Parties' issues No. 4 and 5.

Therefore, I would conclude that CenterPoint has no liability for acts of negligence precluded by paragraphs 14 (escaping gas) or 17 of the tariff, under the plain language of the tariff. The plain language of paragraph 17 excludes, in relevant part:

1. any other loss or damage *not caused by the Company's negligence* arising out of or incident to the furnishing of gas to any Consumer; and

2. any damage or injury resulting from gas or its use *after* such gas leaves the *point of delivery*. (Emphases added).

**Not the Sole Cause.** I agree that CenterPoint is not liable under the tariff for leaking pipes on the customer's property, but I agree with Justice Christopher that "no one contends that the leak was the sole cause of the decedent's injuries." *See University of Texas M.D. v. Baker*, 401 S.W.3d 246, 256 (Tex.App.-Houston [14th Dist.] 2012, pet. filed) (acknowledging there may be more than one proximate cause of an injury).[3] This point undergirds the Canas Parties' other arguments as well, including their allegation that "another cause of the injury was the failure to adequately odorize the gas or to adequately warn of odorant fade [allegedly] result[ing] in the decedent's failure to detect the presence of gas in time to escape."

**After the Point of Delivery and Negligence, Strict Liability, Negligence *Per Se* and Misrepresentation.** I agree with both of my colleagues that, to the extent claims were made by the Canas Parties alleging acts of negligence, strict liability or negligence *per se*[4] occurring after the Point of Delivery, as defined in the tariff, the claims would be barred and summary judgment would be proper.[5] However, to the extent claims were made by the Canas Parties alleging CenterPoint acted negligently, failed to warn or violated statutes *before* the Point of Delivery (or were silent as to where or when they occurred), those claims are not barred by the tariff, and summary judgment on those grounds should be reversed. CenterPoint had the burden to bring forth evidence that the allegedly negligent act occurred after the Point of Delivery under traditional summary judgment standards,[6] which it did not do. I agree with Chief Justice Frost that the negligent-misrepresentation claim was improper. I join both my colleagues in concluding that summary judgment as

---

3. Justice Christopher discusses this point under her gross negligence analysis.

4. It is unclear whether the tariff rule cited by Chief Justice Frost in Part IV.A. of her opinion would override the Point of Delivery provision.

5. CenterPoint argues on appeal that odorant fade occurred after the point of delivery; however, this argument was not raised in its motion for summary judgment.

6. Except as to "knowledge of a dangerous condition," as discussed above.

to intentional misrepresentation was improper.

**Negligence *Per Se*.** I would find it error to grant summary judgment as to the negligence *per se* claims. CenterPoint did not conclusively prove the tariff does not conflict with the state and federal statutes alleged to have been violated and, under traditional summary-judgment standards, it had the burden to do so.

**Gross Negligence.** I join Justice Christopher's opinion as to Section C in reversing the grant of summary judgment on the gross-negligence claim in whole. As discussed above, I join Justice Christopher's opinion in finding that *Grant* governs the issue of enforceability of the tariff.